Could we hear next from the parties in Colvin v. Colvin? Good morning, Your Honor. This is a social security case, a social security disability case. I'm Peter Gorton. I'm the attorney for Mr. Colvin. There are two issues that we have brought. I'll address the first one. The first one is that even if the administrative law judge made no errors at all with respect to what Mr. Colvin could do, that is that he needed to alternate sitting and standing. He could only occasionally have postural things like balancing. He needed a low-stress job and a light-level job, and he could do no fingering on the left and occasional handling on the right that there are no jobs. A vocational expert was properly brought because the question of whether there are jobs is the burden of the commissioner. The vocational expert, when the administrative law judge first gave the hypothetical, gave four jobs, and they're listed, a parking lot attendant, a ticket seller, a teacher's aide, a survey worker, and he said those are the four jobs and gave the number. At that point, and all four of those jobs, and we have set it forth in our brief, all fingering, and in this case, administrative law judge Gale found no ability to finger with the left hand, and constant or frequent handling, and administrative law judge found only occasional. At that point, even if there had been no attorney, if it had been pro bono, even if the representative or attorney who was there asked no questions of the vocational expert, it's error because there's a conflict between what the administrative law judge found and what the jobs require, even if there'd been no questions, but in fact, there were. The vocational expert was asked, what are the requirements of these jobs with respect to fingering and with respect to handling? The vocational expert said, I don't know. I would have to look it up. The vocational expert was then asked, given the hypothetical of the administrative law judge, would you agree that if these jobs required either constant or frequent, either fingering or handling, that there would be no jobs? He said, I agree. He then went back and provided to the court, to the administrative law judge, there was one slight typo, but he provided to the administrative law judge that all of the jobs required constant or frequent. The administrative law judge simply ignored that and found that he could do those jobs. The error is that this court found in Brault that if the vocational expert gives a reason, if he says, okay, even though the jobs require frequent or constant handling, still, based on my experience, based on whatever, based on whatever, he can do the job, then no matter how good the cross is, we can't prevail, but that's not the case. He did not say that. He did not say, in fact, he did not say that he had a reason that the person could do the job. He specifically said they could not. And the administrative law judge and the commissioner apparently take the position that Brault says that you can just ignore what the vocational expert said. The vocational expert said there was no jobs. There are a couple of red herrings in the first argument. One is that the specific question, and mind you, you're getting a typed transcript, you're not listening to it. The specific question said frequent and constant fingering on the left and handling occasional and didn't repeat left when it said handling, but even if it wasn't, there was nothing at all in this case with respect to a right hand. Clearly left hand requires . . . he's got zero ability, according to the judge, and the jobs require constant fingering and, or frequent. And the vocational expert said, under those circumstances, there are not jobs. Let me ask you about that because, as I understand it, the question that was asked the expert was, assuming for a moment that the reaching, handling, and fingering requirements for the teacher aide or even one of the other jobs is frequent or constant, could Mr. Colvin do the job? And he answers no. But the immediately preceding question talked about your client's past work as a teacher aide, resident care aide, and machine feeder, so when the subsequent question refers to other jobs, isn't that naturally understood to mean that that list of jobs, which are your client's past work, it's not these other jobs that the vocational expert was saying he could do? Am I misunderstanding something in this record? We reference the jobs and we reference the hypothetical. We reference, could they do the jobs, if the job required constant, even if we were still talking about those jobs, if the jobs required constant or frequent handling, even if the question was never asked, there's a clear conflict and there's no evidence as to why these jobs. But it isn't. It says, we say, no fingering on the left, and occasional handling, and that obviously conflicts. The preceding question is about the past relevant work, so your argument really is that doesn't make any difference, because the follow-on question is, can he do a job . . . Right. Can he do any job? Any job that requires frequent handling, and the answer was . . . That he cannot, and that's why it was asked, and that's exactly why it was asked, and that's why the vocational expert provided those answers. And again, even if he had been pro bono, even if there hadn't been anybody asking, the jobs required constant . . . The question wasn't whether he could do . . . Pardon? The question was not whether he could do any job that required frequent or constant. It was the teacher aide or even one of the other jobs is frequent or constant. And the other jobs that were spoken about immediately in the question beforehand were the past work jobs. So, I'm a little . . . I'm still a little concerned about how we construe that question, ask that way, to be the expert's opinion that he couldn't do anything. I mean, after all, this is an expert who says he can work as a survey worker, parking lot attendant and ticket seller, all of which do require handling and fingering, but it's not clear whether they require it with both hands. That's true. And if the vocational expert had given that answer, then Brault clearly says, we lose. If the vocational expert says, okay, he can do a job such as the survey worker with one hand, although I don't know exactly how he'd do it, we lose. But that's not the case. He said there are no jobs. We were asking about . . . the problem, again, is that when we were talking, we were talking about all of the jobs. And even if we hadn't, the jobs required constant and frequent to somebody who can't finger at all, and the vocational expert gives absolutely no explanation as to the conflict, but in fact says the opposite. He says there are . . . the person could not do a job based on those factors. All right. I understand you want to reserve some time. Yes. Thank you. Let's hear from the Commissioner. May it please the Court, Katherine Pollack with the Commissioner of Social Security. As an initial matter, the Commissioner states that Colvin waived further judicial review of any arguments with respect to the residual functional capacity, determination, and the weighing of the medical opinion evidence. Clearly in this case, substantial evidence supports the ALJ's finding that residual functional capacity finding that Colvin could perform a range of unskilled light work with the full use of his right dominant hand and only occasional handling with the left non-dominant hand and no fingering with the left non-dominant hand was supported. With respect to the Step 5 determination at issue in this case, the ALJ properly relied on the vocational expert's testimony in finding that given his limitations that Colvin could nonetheless perform the work of a survey worker, ticket seller, and parking lot attendant. I'll just slow down a little bit. Sure. In this case, the ALJ asked the vocational expert to testify based on his knowledge, education, training, and experience, which is precisely what the vocational expert did in this case. He had significant expertise in vocational rehabilitation. He had worked for over fifteen years in that field. As I looked at the record, and maybe I overlooked something, but I couldn't find any resolution of the discrepancy between the vocational expert's testimony that someone with these problems could perform three jobs and the DOT's indication that the jobs required frequent or constant fingering. It seems to me that under our law, that resolution was required and I didn't see it in the record. It's the Commissioner's position in this case that there was no conflict between the Dictionary of Occupational Titles and the limitations assessed in this case. The Dictionary of Occupational Titles does not state whether or not an individual with the other hand or a combination of the two arms, and it's precisely the vocational expert who reconciles those two. Well, the DOT said that those three jobs required frequent or constant fingering. Correct. As a maximum. So how does he do that with no fingers? Right. Well, he can use one arm, which it's silent as to whether or not . . . there's no provision of the Dictionary of Occupational Titles that states if you have one arm, you can do this or you can't. It just says the maximum required for that job is constant or frequent. So the theory is that even though he's essentially lost the use of several fingers on one hand, he can still be a parking lot attendant with his other hand? Right. I mean, I think that that job is actually particularly relevant. Does that make sense to you? Right. I mean, the individual in this case has stated that he drives and the primary responsibilities of the parking lot attendant are driving, which is something he's able to perform with his current abilities. Do you think somebody would hire him? Sure. Really? Okay. I mean, if he's able to perform the qualities of the job. Sure. I think that additionally, the court precedent is clear that there's a conflict when there's a disagreement between the DOT and what the vocational expert says and here those two things are not in conflict because the DOT is silent on this point. Moreover as stated . . . Your adversary argues that what's not clear in the record is that the expert was aware of the fingering handling requirements at the time he offers his opinion about parking lot attendant, ticket taker, and so may not have been aware that those require frequent fingering and might be beyond the capacity of this petitioner. Right. In this state, he didn't say that he didn't know them. He said that he didn't have them before him, which was distinct. He testified in this case on the basis of his experience and familiarity with these jobs, which he agreed to do in the beginning of the hearing. And once providing these limitations as requested by a plaintiff's attorney at the end of the hearing, at no point did he change his opinion, which he had previously stated that an individual with all the limitations contained in the RFC determination and Colvin's characteristics could perform these jobs. But wasn't it the requirement . . . I mean, the ALJ has a responsibility to construct the record, to flesh it out, and it seems to me that the ALJ . . . like your response to this, I couldn't see where the ALJ went into any sort of meaningful inquiry as to whether someone could do any of these jobs without half his fingers on one hand. Well, that limitation was clearly posed to the vocational expert. If you review the transcript, that was clearly stated to the . . . all the limitations that were ultimately contained in the RFC were stated to the vocational expert. If there had been a conflict between the DOT and the vocational expert testimony, then that would pose an additional responsibility for the ALJ to inquire further about the conflict, but since there is no conflict, since those two limitations can be reconciled because the DOT is silent on this point, there was no further requirement. How can they be reconciled? Because the DOT states the maximum requirements of the job, and it doesn't state whether or not an individual can perform that job using primarily one hand or the other, and that's where the vocational expert comes in to offer his or her testimony. Thank you. Okay. So previously, and just with regard to the hypothetical point that was posed to the vocational expert, it is the commissioner's position that the hypothetical extended the ALJ's hypothetical with regard to the handling requirement. It didn't specify which arm, and it's clear that it extended it to both arms. Additionally, if you review the hypothetical, it added a reaching limitation, and it was very convoluted in its wording, and it was not clear whether or not they were differentiating between the DOT's requirements and the individual's requirements, and the jobs stated by the vocational expert, as well as the jobs that the individual performed as his password were. That ambiguity operates in favor of affirmance is what? Because the hypothetical posed does nothing to refute the initial testimony that an individual with all the limitations that the ALJ ultimately found that Colvin had, that he could still perform the three jobs identified, which were the survey worker, the parking lot attendant, and the other position. So nothing in the record refutes that testimony, and the ALJ was perfectly reasonable in relying on the vocational expert testimony, which was given on his considerable expertise. As stated, the ALJ in this case was perfectly within his means to rely on the vocational expert testimony. At the beginning of the hearing, Colvin had the opportunity to object to the vocational expert's testimony, and he did not. Additionally, which is actually particularly notable in this case, is that once the vocational expert provided the reaching and handling and fingering limitations to Plaintiff's attorney, he also offered the attorney at that point the opportunity to challenge those and offer anything with respect to them, and he stated that he did not think that a further hearing was necessary, and he did not offer any further challenges to the vocational expert's testimony. So having given Colvin ample opportunity to respond to the vocational expert's testimony at the hearing, and after the hearing, after he submitted, after the ALJ provided the additional limitations to Plaintiff's attorney, the ALJ was perfectly within his right to consider all the evidence, and based on the vocational expert's fingering with the left non-dominant hand and occasional handling with that hand, that he could perform the three identified positions. The ALJ was perfectly within his means of accepting that testimony. Your argument repeatedly uses the adverb perfectly to talk about the ALJ's actions here and . . . Appropriately, I guess. That might be a little strong. Another word. All right. Thank you very much. Okay. So the Commissioner asked that this Court affirm the Commissioner's decision that Colvin was not disabled within the meaning of the Social Security Act. Thank you. Mr. Gordon. Thank you, Your Honor. I want to address first that question of whether we were talking about all jobs, which clearly we were. There's a second quote. This is on . . . I'm not so sure. That's clearly . . . Well, let me give . . . We've discussed . . . Let me give . . . Like . . . But let me give the second quote. There's a quote. It's transcript 909, and it's the last question. As to the reaching, handling, and fingering requirements of the . . . and there were two past jobs and then the three step five jobs. As to the reaching, handling, and fingering requirements of the one, two, three, four, five jobs that are still in play, and then we ask how do we go about getting the requirements that set forth in the DOT, and Judge Gail decided that the V.E. would send it, and then we could object. So in the one time, we say teacher's aid and other jobs. The second time, we say requirements of the one, two, two past relevant, three, four, five, these are the three step five jobs, five jobs. And Judge Gail says, yes, okay, let's get it, and the V.E. clearly understood it because when he gave it to us, he didn't give the fingering and handling requirements of just the two past relevant. He gave it for all five because it was clear when you were sitting in that courtroom, that's what we were talking about. The question is, if the vocational expert specifically asked, if the jobs require constant  between you and the, or between counsel and the ALJ. With the vocational expert still there, right. But it's a, forgive me, Your Honor. I'm trying to understand your point because I had read the exchanges at page 193, 94, which is what you highlight in your brief. Right. Now, looking at page 909, what is it that the expert says that you think we should construe to mean that he's agreeing that your client cannot do these jobs? Well, the expert's . . . I'm not seeing that, but I want you to point me to it. Okay. The expert in the, the question is whether when we were talking about those, it was understood by everybody we were talking about all five jobs. And when we, when the question was first asked, it said teacher's aid or other jobs. But here we clearly say all five. Now, the V.E. said if jobs require constant or frequent, then this person can't do it. And then when he gave to the court the requirements, he gave it of all five, including the three step five jobs. I'm looking for where that's obvious because at the bottom of 910, then going over to 912, when he starts to speak, I assume the A is his answer, the vocational expert. He starts to talk about security jobs and guard positions. I don't see where he's referencing these other jobs, but if I'm missing something, show me. It's because, and I don't have the . . . but in the transcript, we set forth and in our brief we set forth that the vocational expert then sent in what was asked of him, which is the fingering and handling requirements on all five jobs. He clearly understood it because that was still . . . he's still under oath, he still provides the information, and he provides the information for all five of the jobs. Thank you. We're going to take the case under advisement. We'll get you a decision as soon as we can.